FILED

JUN 0 2 2014

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                      Deputy Clerk

1   MICHAEL J. MANDELBROT, SBN172626
    Attorney At Law
2   505 A San Marin Drive, Suite 200
    Novato, CA  94945
3   Telephone: (800) 970-3878

4   Attorney for Beneficiaries of the Thorpe Insulation Asbestos Settlement Trust

5

6

7                   UNITED STATES BANKRUPTCY COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9                        LOS ANGELES DIVISION

10  In re:                          Case No. 02:07-bk-20016-BB

11  PACIFIC INSULATION COMPANY,     Chapter 11

12       Debtors.                   (Jointly Administered with Case No. 2:07-19721-BB)

13

14  In re:                          Case No. 2:07-19721-BB
                                    (Case Closed)
15
    THORPE INSULATION COMPANY,      OBJECTION - FOURTH ANNUAL REPORT AND
16                                  ACCOUNTING, AUDITED FINANCIAL
         Debtor.                    STATEMENTS, AND CLAIM REPORT;
17                                  DECLARATION OF MICHAEL J. MANDELBROT;
                                    ATTACHED EXHIBITS A-P, inclusive
18

19                                  Date: June 4, 2014
                                    Time: 2:00 p.m.
20                                  Crtrm: 1475              BY FAX
                                    Place: 255 E. Temple St., 14th Floor
21                                   Los Anmk ngeles, CA 90012
                                    Judge: Honorable Sheri Bluebond
22

23

24       The Beneficiaries of the Thorpe Insulation Asbestos Settlement Trust by and through their

25  counsel, Michael J. Mandelbrot and the Mandelbrot Law Firm, hereby **object** to the Fourth Annual

26  Report of Accounting, Audited Financial Statement, and Claim Report due to criminal bankruptcy fraud,

27  misrepresentation of material facts, conflicts of interest, and misappropriation of funds, perjury, and bad

28

1    **TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE:**

2    The Beneficiaries of the Thorpe Insulation Asbestos Settlement Trust and Michael J. Mandelbrot,

3    Esq., ("Mandelbrot") hereby submit this Objection to the Tenth Annual Report and Accounting ("Annual

4    Report") covering Trust activities occurring from January 1, 2013, to and including December 31,

5    2013,("Accounting Period"), and certain activities (both specified and unspecified) that took place outside

6    the accounting period. The factual statements in this Objection to the Annual Report are supported by the

7    Declaration of Michael J. Mandelbrot, Claimants' Representative for hundreds of beneficiaries of the

8    Thorpe Insulation Asbestos Settlement Trust, and the Exhibits attached hereto.  By my signature below, I

9    certify that the exhibits attached hereto are true and correct copies of the documents presented and if

10    called as a witness I could testify to the authenticity thereof.

11    **I.  GENERAL OBJECTIONS**

12    1.    The Fourth Annual Report contains criminal bankruptcy fraud and misrepresentations of

13    material facts due to conflicts of interest, including but not limited to ¶¶3, 4, 5, 18, 20, 21, 22, 23-26, 29,

14    30 and the Declaration of known adverse perjurer Benjamin Smith in support of the Trust's Motion to

15    Approve the Fourth Annual Report.

16    Conflicts of interest for the Managing Trustee, Futures Representative, Trust Advisory Committee

17    Members and their respective attorneys have existed throughout the Accounting Period and have existed

18    since the Trust's inception due to the criminal and unethical acts of former asbestos defense lawyers from

19    the now bankrupt Brobeck, Phleger & Harrison LLP (hereinafter "Brobeck") Stephen Snyder (the current

20    Managing Trustee of the Thorpe Insulation Trust), Gary Fergus (attorney for the Futures Representative

21    since at least 2002), Charles LaGrave (fraudulently called both inside and outside counsel to the  Thorpe

22    Insulation Trust since 2010 depending on circumstances), and Benjamin Smith (current attorney to the

23    Thorpe Insulation Trust and known perjurer). See **Exhibit A**, *Declaration of Michael J. Mandelbrot* ,

24    dated March 12, 2014, ¶¶ 3-5, inclusive; See *also*, **Exhibits 5-9,** attached to the *Declaration of Michael J.*

25    *Mandelbrot*, Attached as **Exhibit A.** See *also*,  **Exhibit B**, *Declaration of Gary Fergus* dated March 20,

26    2014, ¶¶ 2,4. Each is not a "disinterested" party, and has an interest adverse to the estate and violated

27    various ethical codes relating to the representation of the adverse interests (see below). Each also

28    participated in the criminal misappropriation of $35,542,397 from the Western Asbestos Settlement Trust

1    to Brobeck and $16,500,000 from the J.T. Thorpe, Inc. Trust to Trust Fiduciaries (Brayton and McClain)

2    and at least $22,700,000 from the Thorpe Insulation Trust to those with clearly adverse interests. See

3    **Exhibit C** *ranial Reports of Western Asbestos (page 1), J.T. Thorpe, Inc (page 2), and Thorpe Insulation*

4    *(page 3) detailing the misappropriation of funds*.

5          In addition, Chairman of the Trust Advisory Committee for the Thorpe Insulation Trust since its

6    inception Alan Brayton and his 'sidekick' Trust Advisory Committee member David McClain have

7    operated since the Trust's inception with a conflict of interest. Each represents hundreds of claimants and

8    has also criminally and fraudulently misappropriated at least $10,000,000 from beneficiaries as "Special

9    Bonuses" from the J.T. Thorpe, Inc. Trust, Western Asbestos Trust and Thorpe Insulation Trust. See

10   **Exhibit C,** *Annual Reports of Western Asbestos (page 1), J.T. Thorpe, Inc (page 2), and Thorpe*

11   *Insulation (page 3) detailing the misappropriation of funds*.

12         In addition, the Declaration of Benjamin Smith to the Fourth Annual Report of Accounting

13   contains extensive perjury and misrepresentations of material facts and should be stricken. Benjamin

14   Smith, who prepared the report (now employed by Snyder's other former firm Morgan, Lewis and

15   Bockius), is a known perjurer and perpetrator of fraud, and No. 23 to the Fourth Annual Report contains

16   extensive perjury, as well as misstatements of material fact. No. 23 to the Fourth Annual Report should be

17   stricken. See **Exhibit A,** *Declaration of Michael J. Mandelbrot*, dated March 12, 2014, ¶ 16, as well as

18   **Exhibits 12 and 13,** attached thereto.

## II. SPECIFIC OBJECTIONS

20       1.   **OBJECTION TO NO. 3: Appointment of Trustees: Fraud, Bad Faith, Conflicts of**

21   **Interest. Objection: Fraud, Bad Faith, Conflicts of Interest**

22         The March 23, 2006 Order Approving the Appointment of Trustees for the Thorpe Insulation

23   Asbestos Settlement Trust should be considered null and void due to fraud and conflicts of interest. Since

24   the confirmation of the Thorpe Insulation Trust, the Hon. Charles Renfrew (Ret.) has employed former

25   Brobeck attorney Gary Fergus as his attorney. Fergus, as a Brobeck attorney, had litigated against many

26   present and future claimants of the Thorpe Insulation Asbestos Settlement Trust. **Exhibit B,** *Declaration*

27   *of Gary Fergus* dated March 20, 2014, ¶ 2,4. Fergus violated various provisions of Rule 3-310 of

28   California Rules of Professional Conduct by accepting the position as attorney for the Futures

1  Representative. Renfrew violated the provision by even offering Fergus the role as his attorney.  As such,

2  the appointment of Stephen M. Snyder as Managing Trustee by Fergus/Renfrew was fraud and due to the

3  representation of adverse interests. Stephen M. Snyder, the Managing Trustee of the Thorpe Insulation

4  Trust since confirmation, is a former co-worker of Fergus and an asbestos defense attorney, who also

5  violated Rule 3-310 by accepting employment with interests adverse to past, present and future

6  beneficiaries of the Trust. Both Fergus and Snyder spent decades litigating *against* the present and future

7  claimants of the Trust and clearly have interests adverse to the Thorpe Insulation Trust. The text of Rule

8  3-310, states in part:

9  California Rules of Professional Conduct: **Rule 3-310 Avoiding the
10  Representation of Adverse Interests**
   . . . .

11  (B) A member shall **not accept or continue representation** of a
   client without providing written disclosure to the client where:
12  The member has a legal, business, financial, professional, or
   personal relationship with a party or witness in the same matter; or
13  *The member knows or reasonably should know that:*
14  *the member previously had a legal, business, financial, professional,
   or personal relationship with a party or witness in the same matter*; and
15  the previous relationship would substantially affect the member's
   representation; or
16  *The member has or had a legal, business, financial, professional, or
17  personal relationship with another person or entity the member knows or
   reasonably should know would be affected substantially by resolution of the
18  matter; or*
19  *The member has or had a legal, business, financial, or professional
   interest in the subject matter of the representation.*

20
21  (C) A member **shall not, without the informed written consent of
   each client:**
22  Accept representation of more than one client in a matter in which
   the interests of the clients potentially conflict; or
23  Accept or continue representation of more than one client in a matter
   in which the interests of the clients actually conflict; or
24  *Represent a client in a matter and at the same time in a separate
25  matter accept as a client a person or entity whose interest in the first matter
   is adverse to the client in the first matter.*

26
27  (E) A member **shall not, without the informed written consent of
   the client or former client,** *accept employment adverse to the client or
28  former client where, by reason of the representation of the client or former*

1    *client, the member has obtained confidential information material to the*
     *employment.*

2
            (F) A **member shall not accept compensation** for representing a
3    client from one other than the client unless:
            *There is no interference with the member's independence of*
4    *professional judgment or with the client-lawyer relationship*; and

5    Managing Trustee Snyder clearly had a bias and conflict against both plaintiff asbestos lawyers, and past,

6    present and future victims of asbestos disease. Snyder also had interests adverse to past, present and future

7    claimants of the Thorpe Insulation Asbestos Settlement Trust. See **Exhibit D,** *Biography of Managing*

8    *Trustee Stephen Snyder.* See **Exhibit E**, In Re Complex Asbestos Litigation, AO47921, First District,

9    Div. Three, July 19, 1991 (Snyder, while representing asbestos defendants, *disqualifying* asbestos Plaintiff

10   lawyer for hiring his former paralegal).

11          Fergus, Snyder and LaGrave all litigated against many of the exact same default and present

12   claimants of the Trust. Clearly, these former Brobeck lawyers cannot litigate against claimants and then

13   purport to "represent the interests" of these same claimants as Trustees, Attorneys for the Futures

14   Representative or Legal Consultants. This is a conflict of interest which cannot be waived. In fact, the

15   United States Department of Justice Chapter 11 Trustee Handbook specifically states that a Trustee must

16   be a "disinterested person."See **Exhibit F**, *Department of Justice Chapter 11 Trustee Handbook,*

17   published May 2004, pg. 8, Chapter 3.Disinterested person is defined at 11 U.S.C. §1104(d) and

18   specifically states that a Trustee must not be a person holding an interest materially adverse to the interest

19   of the estate by reason of a direct or indirect relationship to, connection with, or interest in the debtor.

20   *Ibid.* Snyder is clearly not "disinterested" and has clear conflicts of interest with the estate.

21          In addition, simultaneous with Snyder's service as Managing Trustee of the Thorpe Insulation

22   Asbestos Settlement Trust, Snyder also served as head of the Brobeck Liquidating Committee. See

23   **Exhibit 5,** attached to the *Declaration of Michael J. Mandelbrot,* attached as **Exhibit A.**

24          In these dual roles and clearly displaying a conflict of interest and lack of disinterestedness,

25   Snyder improperly misappropriated of $35,542,397to the Brobeck Liquidating committee and his other

26   former firm Morgan Lewis & Bockius. See **Exhibit C,** *Annual Reports of Western Asbestos (page 1), J.T.*

27   *Thorpe, Inc (page 2), and Thorpe Insulation (page 3) detailing the misappropriation of funds.*

28

1    Removal of Stephen Snyder as Managing Trustee due to fraud, misappropriation of funds and

2    conflicts of interest is necessary for the proper administration of the Trust. **Exhibit F**, *Department of*

3    *Justice Chapter 11 Trustee Handbook*, published May 2004, pg. 8, Chapter 3. In addition, pursuant to

4    § 1105 of the Bankruptcy Code, the court may terminate a Trustee's appointment and restore the debtor to

5    possession. See **Exhibit F**, *Department of Justice Chapter 11 Trustee Handbook*, published May 2004,

6    pg. 16.

7    The Beneficiaries and Mandelbrot request, as real parties in interest, that this Objection serve as

8    Notice that at the June 4, 2014 Annual Report meeting Mandelbrot will seek to terminate the appointment

9    of Stephen Snyder. Further, pursuant to § 105(a) of the Bankruptcy Code, the Beneficiaries and

10    Mandelbrot request this court raise, sua sponte, the issue of whether a trustee's appointment should be

11    terminated. See **Exhibit F**, *Department of Justice Chapter 11 Trustee Handbook*, published May 2004,

12    page 16.

13    2.    <u>**OBJECTION TO NO. 4**</u>: **Appointment of Trust Advisory Committee –**

14    **Objection: Fraud, Bad Faith, Conflicts of Interest.**

15    Alan Brayton, Chairman of the Trust Advisory Committee since the effective date of this Trust

16    filed the fraudulent <u>Kananian</u> claim referred to in Item No. 23(c) of the Western Asbestos Tenth Annual

17    Report and Accounting submitted April 30, 2014. The Trust first became aware of this fraudulent claim in

18    January 2007, when the Honorable Judge Harry Hanna issued a scathing published Order indicating that

19    Brayton had committed "institutional fraud" in the <u>Kananian</u> matter, including fraudulent bankruptcy

20    claims and claim forms, manipulation of evidence and had lied extensively to the Court about bankruptcy

21    claims. See **Exhibit 16**, *Hon. Judge Harry Hanna Order dated January 18, 2007, detailing Brayton*

22    *fraud*, attached to **Exhibit A**, *Declaration of Michael J. Mandelbrot dated March 12, 2014; see also,*

23    **Exhibit G**, *Various Newspapers Articles Detailing Brayton fraud in Kananian,* 2007. Brayton was

24    fraudulently paid over $500,000 in the <u>Kananian</u> matter by the Western Asbestos Trust and his removal as

25    Chairman of the Trust Advisory Committee was required at that time. These fraudulently obtained monies

26    by Chairman Brayton have never been paid back to the Western Asbestos Trust. (See additional

27    information in the Objections below.) The Thorpe Insulation Asbestos Trust Agreement permits removal

28    of the Trust Advisory Committee members due to "bad faith" and the "misappropriation of funds."

1  Manager of the Trust Advisory Committee Alan Brayton is guilty of both and his removal as the Manager

2  of the Trust Advisory Committee is mandated. Removal of Brayton as Chairman Trust Advisory

3  Committee Member is also required due to the conflicts of interest with Snyder, Fergus and McClain and

4  the concealment of fraud.  Snyder, Brayton, McClain and Fergus were clearly not disinterested and

5  operated with extensive conflicts of interest. Brayton has also breached his fiduciary duty to claimants and

6  beneficiaries and removal is appropriate. See **Exhibit 18**, *Definition of Fiduciary,* attached to **Exhibit A**,

7  *Declaration of Michael J. Mandelbrot.* In addition, Peter Kraus needs to be removed as a Trust Advisory

8  Committee member. Kraus is currently being sued for bankruptcy claim fraud and litigation fraud in the

9  well publicized Garlock decision. Kraus clearly doesn't have the capability, integrity or mentality to serve

10  as a Trust Advisory Committee member. In addition, any payments to Trust Advisory Committee

11  members for "substantial contribution" or as "special bonuses" are clearly fraud and not in the best

12  interests of the Trust.

13      3.   **OBJECTION TO NO. 5**: Appoint and Continuation of Futures Representative –

14  Objection: Fraud, Bad Faith, Conflicts of Interest.

15      The Beneficiaries and Mandelbrot hereby incorporate all previously stated objections, as stated

16  herein. Since December 2, 2002 the Futures Representative has retained, used and utilized an attorney

17  with a conflict of interest, Gary Fergus. **Exhibit B**, *Declaration of Gary Fergus* dated March 20, 2014,

18  ¶¶ 2,4. As a former Judge, Charles B. Renfrew should never have offered employment to an individual

19  with a conflict of interest against beneficiaries (that cannot be waived). The hiring of a former asbestos

20  defense lawyer (who spent decades arguing victims of asbestos weren't sick, were liars and not exposed

21  to insulation) to represent future victims of asbestos disease is the representation of adverse interests and

22  clearly not in the best interest of future claimants. Any decisions involving Fergus should be considered

23  void and any and all monies paid to Fergus (clearly obtained through fraud) by the Thorpe Insulation

24  Trust should be reimbursed to the Trust. The Thorpe Insulation Settlement Trust, through these conflicts

25  of interest, has misappropriated to Fergus, a former defense attorney with a conflict of interest, millions of

26  dollars which should be reimbursed to the Trust. (***See, Thorpe Insulation Annual Reports 2010-2013***

27  ***relating to "Significant Vendors."***)In bad faith, Fergus also assisted in the misappropriation of

28

1   $35,542,397 to his former friends and co-workers at the Brobeck firm. See **Exhibit B**, *Declaration of*

2   *Gary Fergus* dated March 20, 2014, ¶¶ 2, 4.

3       Fergus is clearly not "disinterested" and has interests adverse to the future and present claimants

4   of the Thorpe Insulation Trust. Moreover, the Futures Representative Charles B. Renfrew, a man of

5   advanced age and limited faculties, should be removed for the bad faith hiring of Mr. Fergus and the

6   misappropriation of funds to Fergus and others.

7       4.   **OBJECTION TO NO. 18**: **J.T. Thorpe Settlement Trust, Thorpe Insulation Settlement**

8   **Trust, Plant Insulation Company Asbestos Settlement Trust Administration – Objection: Fraud,**

9   **Bad Faith, Conflicts of Interest.**

10      California Courts have determined that multiple representations in related estates create a

11  rebuttable presumption that the representation is per se improper. **See, e.g., In re Lee, 94 B.R. 172, 180**

12  **(Bankr. C.D. Cal 1988).** See, **Exhibit F**, *Department of Justice Chapter 11 Trustee Handbook*, published

13  May 2004, page 16.

14      The sharing of Thorpe Trust Trustees, fiduciaries, employees and staff as multiple representatives

15  in related estates is per se improper. This creates a conflict of interest as Trustees, fiduciaries and trust

16  employees have access to confidential documents submitted for the purposes of individual claims. In

17  addition, numerous Trust employees, including former Brobeck attorney (who oversees claim processing)

18  Chuck LaGrave, have a conflict of interest and interests adverse to the estate. Extensive conflicts exist

19  against many Claimants' attorneys and claimants, and these conflicts are applicable to the entire staff. In

20  addition, the use and utilization of Trust funds specifically for beneficiaries of the Thorpe Insulation Trust

21  is an improper use of Trust funds. The Trust clearly fails to mention this sharing agreement includes the

22  J.T. Thorpe, Inc. Settlement Trust.

23      5.   **OBJECTION TO NO. 22:Indemnity Fund (Self Insured Retention) – Objection:**

24  **Misappropriation of Trust Funds, Bad Faith, Fraud, Conflicts of Interest**

25      This is a misappropriation of $5,000,000 of the Trust beneficiaries' assets. Clearly, this

26  misappropriation is due to the prior misappropriation of over $40,000,000 by the Managing Trustee

27  Stephen Snyder and Trust Advisory Committee Members Alan Brayton and David McClain as described

28  above. As described in the 2004 Western Asbestos Trust's Annual Reports, the Trust was unable to secure

---

1  indemnity insurance. See *2004 Western Asbestos Settlement Trust Annual Report and Accounting*, pg. 7,

2  No. 16 (Self Insured Retention).

3       The Trustees committed bankruptcy fraud in 2004 by indicating that insurance is "cost

4  prohibitive." This was a lie and bankruptcy fraud. The reason for the Western Trust's inability to secure

5  indemnity insurance in 2004 was clearly due to the misappropriation of Trust Funds (a.k.a. "Special

6  Bonuses") previously paid to Trust Advisory Committee Members and Brobeck which were wholly

7  improper. See *2004 Western Asbestos Settlement Trust Annual Report and Accounting*, pg.11, No. 22, 23.

8       Clearly, the premiums for indemnity insurance for Trustees, the Trust's officers and employees,

9  the Futures Representative, the TAC and each of their respective agents would be far less than

10  $40,000,000. The misappropriation of $5,000,000 by a self-insured retention fund is bad faith, fraud, a

11  misappropriation of Trust funds and is driven by a conflict of interest and a desire to conceal fraud. A

12  review of the 2004 Western. Asbestos Settlement Trust Annual Report reveals that this $40,000,000 fund

13  was created in 2004 and indicates that the monies would be returned to the Trust "after 3 years" (not

14  coincidentally, the same as the Statute of Limitations for Fraud). See *2004 Western Asbestos Settlement*

15  *Trust Annual Report and Accounting*, pg.7, No. 16 (Self Insured Retention).

16       The $40,000,000 was never returned to the Western Trust after 3 years and clearly remains in

17  place due to the bad faith, fraud and misappropriation of funds by Trustees, Futures Representative, Trust

18  Advisory Committee Members and their respective Agents and Professionals. In Thorpe Insulation, this

19  $5,000,000 should be returned to the beneficiaries.

20       **6.**    <u>**GENERAL OBJECTION TO NO. 23**</u>: **Legal Disputes – Objection: Fraud, Bad Faith,**

21  **Conflicts of Interests, Misrepresentation of Material Facts**

22       Morgan, Lewis & Bockius, (hereinafter "Morgan") counsel to the Trust, is a "Professional" whose

23  employment must be approved by the Court and must be disinterested. Professionals are required to be

24  "disinterested and hold no interest adverse to the estate."See **Exhibit F**, *Department of Justice Chapter 11*

25  *Trustee Handbook*, published May 2004, pg. 64, Chapter 10 – Employment and Supervision of

26  Professionals. Morgan is also Managing Trustee Stephen Snyder's former employer. Morgan is also a

27  firm that represents asbestos defendants against the interest of beneficiaries. Morgan is also a firm that

28  improperly diverted millions of dollars of Thorpe Insulation Trust assets. (*See 2004 Western Asbestos*

1    *Settlement Trust Annual Report and Accounting*, pg. 11, No. 23.)Morgan Lewis employs many former

2    Brobeck lawyers.

3        Morgan clearly has a known conflict of interest and is not a disinterested party. As a result of this

4    conflict, Morgan was put on a multi-million dollar retainer agreement by the Western Trust and given a

5    fee contract with an improper and unethical "success fee."A "success fee" is not in the best interest of

6    beneficiaries and allows for those with adverse interests (i.e., Snyder, Fergus) to award improper fees to

7    their former co-workers at Morgan. The "success fee" is unauthorized and a fraud on the beneficiaries and

8    must be stricken. The Department of Justice Trustee Handbook clearly does not authorize the hiring of a

9    Professional with a clear conflict of interest (and especially no "success fee") and clearly this hiring of

10   Morgan by the Trust amounts to fraud.

11       The employment of a professional with a conflict of interest can result in the denial of

12   compensation to the professional under 11 U.S.C. § 328(c) and to the Trustee under § 326(d). See **Exhibit**

13   **F**, *Department of Justice Chapter 11 Trustee Handbook*, published May 2004, pg. 64, Chapter 10 –

14   Employment and Supervision of Professionals. Any compensation to Morgan should be denied.

15       7.    **OBJECTION TO NO. 23 AND THE DECLARATION OF KNOWN PERJURER**

16   **BENJAMIN SMITH:** *Thorpe Insulation Asbestos Settlement Trust v. Michael J. Mandelbrot and*

17   *Mandelbrot Law Firm*, **Adversary Proceeding United States Bankruptcy Court for the Central**

18   **District, Adversary Case No. 2:12-ap-02182-BB - Objection: Fraud, Perjury, Bad Faith, Conflicts of**

19   **Interest, Misrepresentation of Material Facts**

20       The Thorpe case against Mandelbrot was a fraud. On October 29, 2013, the Honorable Thomas

21   Carlson dismissed the nearly identical Western Asbestos Trust case against Mandelbrot without prejudice

22   due to the case having no merit. See **Exhibit 11**, *Dismissal by the Honorable Thomas Carlson,* attached to

23   **Exhibit A**, *Declaration of Michael J. Mandelbrot.*

24       However, identical cases with nearly identical facts existed in the J.T. Thorpe Settlement Trust

25   and the Thorpe Insulation Company Asbestos Trust v. Mandelbrot in the U.S. Bankruptcy Court for the

26   Central District of California, Case No. 2:12-ap-02182BB. The Honorable Sheri Bluebond presided over

27   that case. The Thorpe case against Mandelbrot was initiated after Mandelbrot accused the Trusts of bad

28   faith, corruption and misappropriation of funds throughout 2010-2011, after Mandelbrot discovered fraud

1   and corruption at the Trusts. See **Exhibit 4**, *E-mails and letters (2010-2011) from Mandelbrot to Trust and*

2   *Fiduciaries re: Bad faith and misappropriation of fund*, attached to **Exhibit A**, *Declaration of Michael J.*

3   *Mandelbrot.*

4         The Thorpe Trusts had <u>never</u> previously accused Mandelbrot of wrongdoing and never questioned

5   the authenticity and veracity of claims filed by Mandelbrot. To support the case against Mandelbrot, the

6   Trusts relied on the testimony of their former employee John Lynch, someone known to the Thorpe

7   Insulation Trust (but unknown to Mandelbrot) as a "pathological liar" and felon, who had also stolen over

8   $20,000 from Thorpe Insulation Trust processor Whitney Lauren. See **Exhibit 7**, *Lynch Fraud*

9   *Documents*, attached to **Exhibit A**, Declaration of Michael J. Mandelbrot dated March 12, 2014. Lynch

10   also had just burglarized Mandelbrot's office and stolen and forged checks. This was the Trust's "star"

11   witness against Mandelbrot.

12         Once the bad faith cases against Mandelbrot were filed by the Thorpe Insulation and J.T. Thorpe,

13   Inc. Thorpe Trusts, the Trust sent a letter dated May 24, 2013, with a 'finding' that Mandelbrot was

14   unreliable. See **Exhibit H**, Fraudulent *"May letter"* sent by Trust to Mandelbrot and signed by Snyder,

15   dated May 24, 2013.The May 24, 2013 letter was supported by a "study" of Mandelbrot claims which was

16   a complete fraud with a false study of Mandelbrot claims done to achieve the results the Trust desired.

17   The control groups used for the 'study' of Mandelbrot claims (deficient claims of Mandelbrot v. deficient

18   claims of other firms) were not randomly selected and as many "hold or deferred" claims of other firms

19   are deemed "deficient claims," the study was a fraud. The study to support the May 24, 2013 letter against

20   Mandelbrot and the entire Thorpe case against Mandelbrot was a complete fraud and defamation and

21   clearly designed to harm beneficiaries and to continue to concealment and cover up of fraud by the Trust

22   and its fiduciaries.

23         The case proceeded to trial before the Honorable Sheri Bluebond on January 21, 2014. Lawyers

24   for the Thorpe Trusts were Stutman, Treister and Glatt (along with Morgan). Prior to trial, neither

25   Bluebond nor Stutman revealed a "close and intimate connection" between themselves. Bluebond and

26   Stutman simultaneously served on the Board of Directors of five different organizations, Stutman was

27   campaigning for Bluebond's reappointment in 2015, and Bluebond was serving as a public speaker at

28   Stutman-sponsored events during the litigation. Recusal was appropriate due to the Honorable Bluebond's

1   bias, prejudice, and close and intimate connection with the Stutman firm. See **Exhibit I**, *E-mail from*

2   *Mandelbrot to Trust Counsel re: Stutman/Bluebond close and personal connection* dated April 4,

3   2014,with Exhibits.

4        During the trial Judge Bluebond exhibited Judicial Misconduct by making every ruling for her

5   friends (Stutman), being rude to litigants (Mandelbrot) and literally "inventing" facts in an effort to make

6   Mandelbrot look unreliable. See **Exhibit J**, *Tentative Ruling from Judge Sheri Bluebond dated March 23,*

7   *2014containing perjury and displaying close relationship to Trust lawyers (Stutman).*

8        In this tentative ruling, Bluebond states (also read into the Record) that "Mandelbrot had a practice

9   of submitting claims for as large as possible … .". *Id*. This was judicial perjury. The practice of

10  submitting a claim for as large as possible was never an allegation against Mandelbrot and/or the

11  Mandelbrot office, was never presented in evidence by the trusts, was materially false and clearly showed

12  a judicial bias in favor of Stutman and the Trusts and prejudice against Mandelbrot. The critical claims at

13  issue were all **LOW** site value claims. In addition, on May 27, 2014, Judge Bluebond clearly admitted she

14  was unaware of Smith's and Fergus' adverse interests.

15       Additional evidence at trial showed there were never irregularities in Mandelbrot's submissions,

16  but instead that the Trusts used a Trust Processor with clear adverse interests to 'create' deficiencies on

17  Mandelbrot claims. In addition, the Trust never followed the FIFO queue, failed to treat Mandelbrot

18  claims similar to those of Trust Advisory Committee members and consistently made "retroactive"

19  changes to the Trust (amendments) and Mandelbrot's claim filing practices were extremely thorough. See

20  **Exhibit A**, *Declaration of Michael J. Mandelbrot*, dated March 12, 2014, ¶¶ 1-30.

21       Prior to December 2011, Mandelbrot filed approximately 20 deficient claims with the Thorpe

22  Insulation The Trust indicating that Navy sailors who leave their ships during ship overhauls would "chip

23  refractory" in the shipyard. After both consulting with the Trust Executive Director and Trust staff and

24  realizing that the claims were deficient, Mandelbrot withdrew each of these claims prior to December 20,

25  2011. Despite Mandelbrot's good faith in withdrawing each of the claims (long prior to the lawsuit), the

26  Trust's lawsuit began focusing on alleging these claims were fraud (the so called "disembarkment

27  claims"). The clear issue at trial became "whether or not Navy sailors are exposed in Navy Shipyards

28  during overhauls." The clear answer was, "Yes." Mandelbrot submitted Declarations and testimony from

1   Captain F.J. Burger, USN, (Ret.), and Navy sailor Paul Genthner supporting the same. See **Exhibit K**,

2   *Declaration of Captain Frank J. Burger, USN (Ret.)* dated October 15, 2013. See **Exhibit L**, *Declaration*

3   *of Paul Genthner, Long Beach Navy Shipyard* employee dated October 1, 2013.

4           On January 23, 2014, Mandelbrot's former counsel negotiated a void, wholly unethical,

5   unconscionable and unenforceable settlement agreement involving not only the Thorpe Trusts, but also

6   the Western Asbestos Company Settlement Trust and the Plant Insulation Settlement Trust. Mandelbrot

7   "reluctantly" agreed on the record despite never having seen the agreement or fully understanding the

8   terms of the agreement. See **Exhibit A**, *Declaration of Michael J. Mandelbrot*, dated March 12, 2014,

9   ¶¶ 1-30. The void, unethical and unconscionable settlement agreement was clearly negotiated through

10  fraud and duress. *Id.*

11          The settlement involved not just the Thorpe Trusts, but also the Western Asbestos Company

12  Settlement Trust and the Plant Insulation Trust. On January 27, 2014, Mandelbrot terminated his

13  relationship with his counsel and notified the Thorpe Trusts that the settlement agreement was rescinded,

14  unethical, void and unenforceable. The settlement agreement far exceeded the damages prayed for in the

15  Complaint. In addition, Bankruptcy Rule 9019 requires Chapter 11 Trustees to obtain Court approval for

16  such compromises and settlements. See **Exhibit F**, *Department of Justice Chapter 11 Trustee Handbook*,

17  published May 2004, pg. 47, Chapter 8 (Compromises and Settlements). **The Trustee must show that**

18  **the settlement is in the best interest of the estate and that the compromise and settlement has been**

19  **properly served upon creditors so they have an opportunity to review the proposed settlement and**

20  **object.** *Id.* This clearly was never done. The Honorable Thomas Carlson has never approved the

21  settlement involving the Western Asbestos Settlement Trust and Plant Insulation Trust despite having

22  exclusive jurisdiction over the Trusts and settlement is clearly not in the best interest of those Trusts.

23  However, utilizing the close and personal relationship with the Honorable Sheri Bluebond, the Trust

24  sought enforcement of the invalid January 23, 2014 settlement agreement involving all four Trusts.

25          Despite a vociferous verbal and lengthy written objection by Mandelbrot and a substantial

26  showing of Trust fraud and perjury by the Thorpe Insulation Settlement Trust and its lawyers, the

27  Honorable Sheri Bluebond ordered enforcement of the January 23, 2014 "agreement." See **Exhibit M**,

28  *Opposition to Motion to Enforce Settlement Agreement* dated March 12, 2014. Bluebond's Order

1  effectively terminated Mandelbrot's claim filing privileges with the Western Asbestos Trusts, Thorpe

2  Insulation Trust, Plant Insulation Trust, and the J.T. Thorpe, Inc. Settlement Trusts.

3       The Honorable Thomas Carlson has never approved the settlement as required by Bankruptcy

4  Rule 9019. Mandelbrot has filed a timely Appeal to Judge Sheri Bluebond's Order and "Judgment" citing

5  fraud, lack of jurisdiction, and that the settlement is void and unethical under California law and the

6  Business and Professions Code and due to fraud. See **Exhibit N**, *Appeal filed by Mandelbrot.*

7       **ADDITIONAL OBJECTION TO NO. 23: Resolution Regarding Default Judgments** (See

8  *Western Asbestos Trust Tenth Annual Report and Accounting)*– **Objections: Criminal Bankruptcy**

9  **Fraud (18 U.S.C. §§ 152-156), Bad Faith, Perjury, Misrepresentations of Material Facts, Conflicts**

10  **of Interest, Failure to Notify the United States Trustee of Fraud**

11       The Thorpe Insulation Trustees (and especially Stephen Snyder) first became aware of Managing

12  Trustee Alan Brayton's extensive bankruptcy fraud on January 18, 2007, when the Honorable Judge

13  Harry Hannah issued a scathing Order and Opinion in *Kananian v. Lorillard Tobacco*, CV442750,

14  Cuyahoga, County, OH, indicating Alan Brayton committed institutional fraud, bankruptcy fraud,

15  concealed evidence and disqualified him from ever practicing in Ohio. See **Exhibit 16**, *Hon. Judge Harry*

16  *Hanna Order dated January 18, 2007*, attached to **Exhibit A**, *Declaration of Michael J. Mandelbrot.*

17  Dozens of newspapers also published stories indicating Alan Brayton had committed fraud and

18  bankruptcy fraud with headlines reading, "Ohio Judge Slaps Down Novato's Brayton Pucell" and "Major

19  Asbestos Law Firm Barred from Court over "Double Dipping" and "Ohio Court Disqualifies Plaintiff

20  Counsel for Misconduct." See **Exhibit G**, *Various Newspapers Articles Detailing Brayton fraud in*

21  *Kananian,* 2007.

22       Alan Brayton was the attorney for the Kananian family simultaneous with his service as the

23  Chairman of the Trust Advisory Committee of the Thorpe Insulation Asbestos Trust. The Western

24  Asbestos Trust fraudulently paid Managing Trustee Alan Brayton over $500,000 on a fraudulent default

25  for Mr. Kananian. **Any and all evidence indicates the Kananian default judgment filed and proved**

26  **up by Trust Fiduciary Alan Brayton was complete fraud.** See **Exhibit 20**, *Brayton internal e-mail*

27  *dated April 5, 2005, indicating Kananian had no exposure to Western Asbestos,* attached to **Exhibit A**,

28  Declaration of Michael J. Mandelbrot; See **Exhibit 22**, *Brayton internal e-mails regarding "making up*

1  *information" and "boilerplates,"* attached to **Exhibit A**, Declaration of Michael J. Mandelbrot. See

2  **Exhibit 23**, *Andreas v. Brayton Purcell Complaint detailing fraud by Brayton*, attached to **Exhibit A**,

3  Declaration of Michael J. Mandelbrot dated March 12, 2014.Without question, all documents and

4  evidence clearly reveal the Western Asbestos Default Judgment was a fraud proved up by Alan Brayton.

5  Mr. Kananian was never exposed at Hunters Point Naval Shipyard as claimed. Boilerplate affidavits

6  wholly unacceptable to the Trust were used to 'create' exposure and inflate damages. Unquestionably, a

7  fraud was committed and extensive funds were misappropriated to a Trust fiduciary.

8       To the extent that the Trustee either discovers or verifies the existence of fraudulent activity, the

9  trustee should notify the United States Trustee <u>immediately</u>. See **Exhibit F**, *Department of Justice*

10 *Chapter 11 Trustee Handbook*, published May 2004, pgs. 21-22, Chapter 3, (Bankruptcy Crimes). The

11 United States Trustee was <u>never</u> notified of the Kananian fraudulent default taken by Chairman Brayton.

12 Managing Trustee Stephen Snyder clearly had reasonable grounds to believe in 2007 that Alan Brayton

13 committed a crime (18 U.S.C. §152) and a criminal referral was required. .*Id.* at pg. 22. Specific criminal

14 violations by the Thorpe Insulation Trust Advisory Committee Chairman Alan Brayton and Managing

15 Trustee Stephen Snyder relating to the <u>Kananian</u> matter included, but was not limited to, knowingly and

16 fraudulently: 1) Concealing property of the estate; 2) Making a false oath or account in relation to a

17 bankruptcy case; 3) Making a false declaration and verification in relation to a bankruptcy case;

18 4) Making a false proof of claim; 5) Receiving a material amount of property from the debtor with intent

19 to defeat the Bankruptcy Code; 6) Transferring or concealing property with the intent to defeat the

20 Bankruptcy Code; 7) Withholding documents relating to the debtor's property and financial affairs from a

21 Trustee or officer of the Court. *18 U.S.C. §§ 152, 157*. See also **Exhibit F**, *Department of Justice Chapter*

22 *11 Trustee Handbook*, published May 2004, pgs. 21-22, Chapter 3- (Bankruptcy Crimes).Clearly, Alan

23 Brayton, as Chairman of the Thorpe Insulation Trust Advisory Committee, having committed bankruptcy

24 fraud on the Western Asbestos Trust should have been removed in 2007.

25       However, the Thorpe Insulation Trust and staff continued to cover up and conceal the Kananian

26 fraud. Next, on March 22, 2010, the Thorpe Insulation Trustees had clear evidence that Chairman Brayton

27 committed fraud in the Kananian claim when the Thorpe Insulation Trust Executive Director Sara Beth

28

1    Brown (also a licensed California attorney) received a subpoena and was deposed in Kananian v. Brayton

2    Purcell after Alan Brayton was sued for malpractice.

3        Brown specifically testified and produced documents on March 22, 2010,clearly showing the

4    Kananian default was fraud and paid to Alan Brayton. See **Exhibit 20**, *Brayton internal e-mail dated*

5    *April 5, 2005 indicating Kananian no exposure to Western Asbestos*, attached to **Exhibit A**, Declaration

6    of Michael J. Mandelbrot. See **Exhibit 21**, *Fraudulent and Boilerplate Documents filed with the*

7    *Kananian default*, attached to **Exhibit A**, Declaration of Michael J. Mandelbrot. See **Exhibit 22**, *Brayton*

8    *internal e-mails regarding "making up information" and "boilerplates,"* attached to **Exhibit A**,

9    Declaration of Michael J. Mandelbrot dated March 12, 2014.See **Exhibit 23**, *Andreas v. Brayton Purcell*

10    *Complaint detailing fraud by Brayton*, attached to **Exhibit A**, Declaration of Michael J. Mandelbrot dated

11    March 12, 2014.

12        In the Executive Director Brown deposition, it was clear that substantial bankruptcy fraud was

13    committed in that Brayton proved an entirely <u>false default,</u> including but not limited to: 1) Brayton

14    claiming Kananian was exposed to asbestos from Western Asbestos while at Hunters Point Naval

15    Shipyard although Kananian was <u>never</u> at Hunters Point Naval Shipyard; 2) The utilization of fraudulent

16    boilerplate exposure affidavits not acceptable to the Trust; 3) The utilization of boilerplate damages

17    affidavits designed to increase the default award; 4) Accepting thousands of dollars of additional

18    fraudulently obtained monies on the Kananian claim in 2006, 2007 and 2010, after it was clearly proven

19    the default judgment (claim) was a fraud. ***Ibid.*** See also 2013 Western Annual Report ¶ 13 regarding

20    increases in payment percentages.

21        In furtherance of this criminal bankruptcy fraud and in an attempt to continue to <u>criminally</u>

22    <u>conceal</u> the Brayton fraud, Sara Beth Brown, Trustees and Trust Advisory Committee Members <u>never</u>

23    <u>reported her subpoena, the deposition of March 22, 2010, or the Kananian fraudulent judgment in any</u>

24    <u>Annual Reports from 2010 through 2013</u>. Each Annual Report filed by the Thorpe Insulation Trust from

25    2010-2013 indicated "the factual statements in this Annual report are supported by the Declaration of Sara

26    Beth Brown, executive Director, in Support of Motion to Approve the Annual Reports (See 2013 Fourth

27    Annual Thorpe Insulation Report, pg. 2, lines 16-17). In every Thorpe Insulation Annual Report from

28    2010-2013, Brown listed "legal matters," "depositions" and "subpoenas received." But not here. Brown

1  criminally concealed the fraudulent Brayton default, the fraudulent documents associated with the default,

2  and failed to report the same in every Annual Report. Every Declaration Sara Beth Brown signed to

3  support the Annual Reports from at least 2010 through 2013 is clearly perjury and criminal bankruptcy

4  fraud. 18 U.S.C.§§152, 157. Brown's immediate removal as Executive Director is clearly necessary due

5  to criminal bankruptcy fraud, concealing bankruptcy fraud and filing false Bankruptcy reports with the

6  United States Trustee. See **Exhibit F**, *Department of Justice Chapter 11 Trustee Handbook*, published

7  May 2004, pgs. 21-22, Chapter 3, (Bankruptcy Crimes).

8       Additional and extensive information is in the possession of the Thorpe Insulation Asbestos

9  Company Trust that confirms the Kananian default (and others), taken by Alan Brayton, was a fraud,

10  including but not limited to the following:

11      1) Alan Brayton's own internal firm e-mails which clearly indicate there is "not enough

12         exposure" to qualify for the Western Trust. See **Exhibit 20**, *Brayton internal e-mail dated*

13         *April 5, 2005 indicating Kananian no exposure to Western Asbestos*, attached to **Exhibit A**;

14      2) Alan Brayton's own internal firm e-mails wherein Brayton tells his firm (only after being

15         caught in the Kananian fraud) to stop "making up" information on bankruptcy claims to stop

16         using 'boilerplate documents "See **Exhibit 22**, *Brayton internal e-mails regarding "making up*

17         *information" and "boilerplates,"* attached to **Exhibit A**; The boilerplates referenced are

18         **exactly** the boilerplates Mandelbrot recalls from his employ at Brayton Purcell.

19      3) Additional lawsuits against Brayton which detail the fraudulent Kananian claim.  See

20         **Exhibit 23**, *Andreas v. Brayton Purcell Complaint detailing fraud by Brayton*, attached to

21         **Exhibit A**;

22      4) Brayton's own former employees (including Mandelbrot) who will testify the exact boilerplate

23         documents and exposure fraud committed in Kananian were utilized in hundreds of other

24         defaults taken by Brayton. See **Exhibit A**, *Declaration of Michael J. Mandelbrot*, dated

25         March 12, 2014, ¶¶ 3-5, inclusive;

26      5) Stephen Snyder's Testimony dated August 30, 2013in *Thorpe v. Mandelbrot* wherein he

27         commits perjury in discussing the Kananian claim and the discoveries of the Trust. See

28         **Exhibit O**, *Deposition of Stephen Snyder dated August 30, 2013, pages 21-35*, inclusive.

1    Snyder and the Trust clearly also made sure the name "Kananian" was misspelled "Canadian"

2    in the transcript to ensure no further discoveries of the fraud.

3    The Western Asbestos Tenth Annual Report conclusion by these very Trustees "that incurring the

4    expense of pursuing this matter further – or investigating other default judgments – would not benefit the

5    Trust's beneficiaries" is criminal fraud, bad faith, misrepresentation of material facts and wholly untrue

6    (see *2013 Tenth Western Annual Report, pg. 15, line. 13, 14*). The Kananian claim alone is $500,000

7    which should be repaid to the Western Trust for the benefit of beneficiaries. This $500,000 can easily

8    fund an investigation of and review of other fraudulent Brayton default judgments. Only a small portion

9    of the 1900 default judgments referenced by the Trust in the Annual Report were filed by Brayton. The

10    potential recovery for the beneficiaries is well over $50,000,000. The expense of the investigation is

11    clearly justified. Mandelbrot would review every Brayton default for free for the benefit of the

12    beneficiaries.

13    The investigation of ALL default judgments taken by Brayton should have been done in 2007 for

14    the benefit of beneficiaries and needs to be done now. Especially given that Brayton was paid over

15    $100,000,000 in defaults judgments (including Kananian), the possible recovery to the Trust is extensive.

16    Unfortunately, due to unethical conflicts of interest and adverse interests, the Trustees (specifically

17    Stephen Snyder), Trust Advisory Committee (David McClain and attorney Steven Sacks), the Futures

18    Representative (including Gary Fergus) and Trust Fiduciaries (Executive Director Sara Beth Brown)

19    chose to conceal the fraud in 2007 despite the legal duty to report the fraud. ***Ibid***. The Thorpe Insulation

20    Asbestos Company Trust Annual Reports from 2010-2014 are clearly bankruptcy fraud for concealing

21    these facts. ***Ibid***. Importantly, even after the Thorpe Insulation Trustees learned of this fraud in 2006,

22    additional crimes were committed by paying (fraudulently) additional monies to Brayton in Kananian in

23    2006, 2007, and 2010. Alan Brayton, head Trust Advisory Committee Member of the Thorpe Insulation

24    Asbestos Company Trust has never repaid these criminally obtained monies to the Western Trust for the

25    beneficiaries. See **Exhibit 23, ¶¶ 52-100, inclusive,** *Andreas v. Brayton Purcell Complaint detailing*

26    *fraudulent defaults by Fiduciary Brayton*, attached to **Exhibit A**, Declaration of Michael J. Mandelbrot.

27    Clearly, the conclusion by the Trust not to require disgorgement from Brayton of wrongfully

28    received monies, not to investigate all of Brayton's default judgments (possibly over $200,000,000

1  fraudulently obtained) and to permanently remove Alan Brayton as a Chairman of the Trust Advisory

2  Committee harms beneficiaries and is due to conflicts of interest, adverse interests and the attempts to

3  conceal criminal fraud by the Trust, its attorney and agents. Nothing prohibits the review of fraudulent

4  default judgments and the Court's Order expressly does not prohibit the same. The Trusts indicating that

5  the "confirmation hearing expressly eliminated the possibility of such an enterprise" is clearly perjury and

6  fraud designed to harm the beneficiaries. Every Brayton default judgment needs to be reviewed for the

7  benefit of the beneficiaries to return fraudulently obtained monies by Brayton to the Western Asbestos

8  Company Trust.

9       As additional evidence of the Brayton fraud requiring removal, it should be clearly noted that at

10  the same time Brayton proved up the fraudulent Kananian Default (2002), Brayton also committed tax

11  fraud on the Government and underreported his taxable income by well over $12,000,000. Over 10 years

12  later, Brayton *finally* admitted this fraud and paid $3,580,346 in additional tax liability for 2002, plus a

13  penalty of $537,051. See **Exhibit P** – Brayton Tax Deficiency 2002, dated January 24, 2013. Brayton was

14  clearly attempting to conceal his fraud from the government as well.

15       It should also be clearly noted that the Trust's investigation of the fraudulent Kananian default

16  proven and paid to Chairman Alan Brayton was a complete sham. The Trust hired Keker & Van Nest LLP

17  to investigate the Brayton fraud and paid them well over $100,000. Keker & Van Nest was wholly

18  unqualified to investigate this claim and had a clear conflict of interest. Keker & Van Nest has no

19  experience in asbestos litigation, never filed an asbestos trust claim (except possibly the false claim

20  identified in the Tenth Western Asbestos Annual Report, Item No. 23), never represented a victim of

21  asbestos disease and is only noted as a "White Collar Criminal Defense" firm (something the Trustees and

22  TAC members clearly need). In addition, Keker & Van Nest shares office space with the Futures

23  Representative of the Trust creating a conflict and lack of "disinterest." Clearly, the investigation by

24  Keker & Van Nest of the Brayton fraud was influenced by the Futures Representative (and its attorney

25  Gary Fergus) to achieve a result justifying the Trustee's (corrupt and criminal) actions. Any monies paid

26  to Keker & Van Nest should be returned to the Trust for the benefit of beneficiaries due to

27  misappropriation.

28    8.   **OBJECTION TO NO.24:** **Amendments to Trust Documents – Objection, Conflicts of**

1  **Interest, Fraud, Bad Faith**

2    The Beneficiaries and Mandelbrot hereby incorporate by reference the "General Objections"

3  stated above and Specific Objections to Item Nos. 3-5 above, as stated herein. These amendments, as well

4  as all prior amendments voted by Trustees, Futures Representatives and Trust Advisory Committee

5  members are void due to conflicts of interest and fraud. In addition, the Thorpe Insulation Company Trust

6  has always retroactively applied changes in bad faith. See **Exhibit 4,***Letters and E-mails by Mandelbrot to*

7  *Trust detailing retroactive Trust changes and Trust Bad Faith*, attached to **Exhibit A**, Declaration of

8  Michael J. Mandelbrot. The vague amendments by the Thorpe Insulation Trust should be considered void.

9    **9.** **OBJECTION TO NO. 25: Notification to Beneficiaries – Notice of Settlement of**

10  **Mandelbrot adversary proceeding (posted January 31, 2014). – Objection, Conflicts of Interest,**

11  **Fraud, Bad Faith, Defamation**

12    No settlement between Mandelbrot and the Plant and Western Asbestos Company Trust has ever

13  been approved by the Honorable Thomas Carlson. In fact, Judge Carlson dismissed the Western Asbestos

14  Company Trust case against Mandelbrot. See **Exhibit 11**, *Dismissal by the Honorable Thomas Carlson,*

15  attached **to Exhibit A**, *Declaration of Michael J. Mandelbrot dated March 12, 2014.* The substance of the

16  Notice and facts therein, amount to defamation of Mandelbrot and constitute retaliation resulting from

17  Mandelbrot's notifications to Trusts of Trustees, Trust Advisory Committee Members and their Agents'

18  fraud and misappropriation of funds. Any such Notice should be removed and corrective action taken.

19  Additional Notices listed are in bad faith and fraud including but not limited to the "vague" Notices about

20  the FTP sites outages and any and all Notices about Mandelbrot.

21    **10.** **OBJECTION TO NO. 26: Attempt to Place False Claim in Database – Objection:**

22  **Fraud, Bad Faith, Perjury, and Misrepresentation of Material Facts**

23    Since early February, the Trust FTP sites have "closed" with very little information given to

24  beneficiaries. This has been incredibly burdensome on Beneficiaries and counsel and has caused

25  considerable delays in reviews of claims. The Annual Report is the first time the Trusts have reported that

26  ONE false claim was filed. There has never been a Notice to Beneficiaries that a false claim was placed in

27  the database. Unquestionably, the notice of "one false claim" is a fraud. The Trust website/system was

28  taken offline as an effort to continue to perpetrate fraud (detailed above), conceal evidence (of Trust

1  fraud) and to impair Mandelbrot's ability to transfer claims. In addition, evidence exists that a criminal

2  investigation of the Trusts is already taking place. The Beneficiaries request complete information about

3  the "false claim" (who made it, when, and all circumstances surrounding the same). Moreover, the

4  potential placement of one false claim does not require the cost and expense of an entirely new system

5  and impairing hundreds of pending and future beneficiaries' ability to file claims. This is criminal fraud, a

6  sham and creates irreparable harm to Beneficiaries. Claims are delayed and have to be re-filed and a

7  review of prior claim filings is not possible. This removal of the FTP claim filing site is clearly a sham by

8  the Trust, Trustees, Fiduciaries and Professionals to hide and conceal criminal fraud. Clearly, it is

9  suspected that Keker & Van Nest "guided" the Trusts as to the best method to conceal information of the

10  FTP site as an effort to continue to perpetrate criminal fraud.

11      11.  **OBJECTION TO NO. 26:** Trustee Compensation – Objection, Conflicts of Interest,

12  **Fraud, Bad Faith**

13      The Beneficiaries and Mandelbrot incorporate by reference herein Objections to Item Nos. 3-5

14  above, as stated herein. Each Trustee is not a "disinterested party" and any compensation to the same is

15  void and should be recouped to the Trust for the benefit of the Beneficiaries. As stated above, Trustee

16  Stephen Snyder has committed multiple and extensive bankruptcy crimes (18 U.S.C. §§ 152-157). Futures

17  Representative Charles Renfrew's compensation should also be considered void for his employment of an

18  attorney with a conflict of interest.

19      12.  **OBJECTION TO NO. 30:**  Significant Vendors – Objection: Conflicts of Interest,

20  **Fraud, Bad Faith, and Misappropriation of Trust Funds**

21      The Beneficiaries and Mandelbrot incorporate by reference herein Objections to Item Nos. 2-4 and

22  No. 23(c) above, as stated herein. The following "Significant Vendors" are not "disinterested parties" and

23  have interests adverse to Beneficiaries and all Beneficiaries' Counsel: Fergus, a Law Office, Counsel to

24  the Honorable Charles Renfrew; Futures Representative, Keker & Van Nest LLP, law firm hired to

25  investigate the matter described in ¶ 23(c); Charles W. LaGrave, Claims and legal consultant to the Trust;

26  Molland Law; Morgan Lewis & Bockius; Shephard Mullin Richter & Hampton LLP; and Stutman,

27  Treister & Glatt P.C. Each of the above has a conflict of interest pursuant to the California Rules of

28  Professional Conduct and is not a disinterested party as having interests adverse to the Estate. Each has

1    also assisted in the concealment and cover-up of Brayton fraud in the Kananian claim. In addition,

2    payments to each of the above were procured through bad faith and/or fraud. Any and all payments to the

3    above should be considered null and void and returned to the Beneficiaries and their permanent removal

4    as significant vendors is mandatory due to fraud. Gary Fergus, counsel for the Futures Representative,

5    specifically has committed multiple acts of criminal and unethical conduct and conspired to

6    misappropriate and has misappropriated millions of dollars from beneficiaries. Every dollar billed to the

7    Trust by Gary Fergus (Fergus, a Law Office) from 2004-2014 should be returned to the Trust due to

8    fraud, bad faith, unethical conduct and conflicts of interests. Fergus was also a significant factor in

9    misappropriating Trust funds of $35,542,397 to his former firm (Brobeck) and has committed extensive

10    fraud and unethical misconduct. **Exhibit B**, *Declaration of Gary Fergus* dated March 20, 2014, ¶¶ 2,4. A

11    referral to the United States Attorney is clearly warranted. Fergus, LaGrave, Molland and Benjamin Smith

12    (Morgan) are all former asbestos defense attorneys with Snyder at Brobeck and have significant interests

13    adverse to the estate. Steve Sacks (Shephard Mullin) also has extensive conflicts of interest and has

14    committed perjury in order to criminally conceal the fraud detailed in Objection to No. 23(c), above.

15    Sacks committed perjury to defend Alan Brayton and has failed in his duties to the Trust. See **Exhibit A**,

16    *Declaration of Michael J. Mandelbrot*, dated March 12, 2014, ¶ 14(c). See **Exhibits 16 and 16(a)**, *Hon.*

17    *Judge Harry Hanna Order dated January 18, 2007,detailing Brayton fraud*, attached to **Exhibit A**,

18    *Declaration of Michael J. Mandelbrot, dated March 12, 2014.*Sacks employment and any payments to

19    Sacks or Shephard Mullin are a sham and misappropriation of Trust funds and should be returned to the

20    Trust. Sacks is clearly a perjurer.

21        The following Table 1 summarizes the fraud, bad faith, and misappropriation of J.T. Thorpe Inc,

22    Western Asbestos and Thorpe Insulation Trust funds by the Trustees, Trust Advisory Committee

23    Members, the Futures Representatives and each of their extensive agents and attorneys. Table 2

24    summarizes the criminal and unethical conduct of the Trust's actors.

25        **Table 1: Summary of Misappropriation of Trust Funds due to Adverse Interests Criminal**

26    **Fraud, Bankruptcy Fraud, Bad Faith**

| Type of Misappropriation of Trust Funds | Amount Misappropriated from Claimants/Beneficiaries (dollars/est.) |
|---|---|
| | |

| Type of Misappropriation of Trust Funds | Amount Misappropriated from Claimants/Beneficiaries (dollars/est.) |
|---|---|
| Managing Trustee Stephen Snyder pays himself and his former firm (Brobeck) a "Special Bonus" (2004 Western Asbestos Annual Report) Snyder is simultaneously serving as the Executive Trustee of the Thorpe Insulation and Western Trust and the Chairman of the Brobeck Liquidation Committee creating a clear conflict of interest – See Exhibit C | $35,542,397 Western Trust<br><br>$22,000,000 Thorpe Insulation Trust |
| Trust Advisory Committee Members Alan Brayton and David McClain are awarded improper and unlawful "Special Bonuses" – See Exhibit C | $12,300,000 Western Trust<br><br>$16,500,000 J.T. Thorpe, Inc. Trust<br><br>$5,000,000 Thorpe Insulation Trust |
| Thorpe Insulation Trust creates a "Self Insured Retention" (Indemnity) fund due to the fraud of Trustees, Futures Representative, Trust Advisory Committee Members and its agents and attorneys (2004-2013 Thorpe Insulation Annual Reports – see "Indemnity Fund – Self Insured Retention." | $5,000,000 (J.T. Thorpe, Inc. Insulation)<br><br>$40,000,000 (Western Asbestos)<br><br>$5,000,000 (Thorpe Insulation) |
| Futures Representative Attorney Gary Fergus (despite a known conflict and lack of "disinterest") is hired as the Attorney for the Futures Representative and misappropriates Thorpe Insulation Trust funds each year as a "Significant Vendor" (see Thorpe Insulation Annual Reports 2010-2013 under "Significant Vendors"). | $6,000,000 (at least $500,000 per year x 12 years) |
| Chuck LaGrave, former Brobeck attorney, is hired as both inside and outside counsel for the Trust despite conflicts of interest. LaGrave was not "disinterested" and committed extensive fraud (See Western Asbestos Annual Reports 2004-2013 under "significant vendor"). | $3,000,000 (at least $300,000 per year x 10 years) |
| Alan Brayton, Chairman of the Trust Advisory Committee of the Thorpe Insulation Trust is paid in the Kananian default judgment and numerous other fraudulent defaults (see above). | $500,000 (at least, with the possibility of up to $100,000,000)) - Western |
| All payments to Morgan, Lewis and Bockius from 2004-2013. Morgan, Lewis and Bockius is Snyder's former employer and a firm with a Conflict of Interest, a lack of "Disinterest" who has misappropriated extensive funds on bad faith lawsuits (Zurich and Mandelbrot). (See Western Annual Reports 2004-2013.) | $20,000,000 (at least) - $2,000,000 per year x 10 years. |

**Table 2: Summary of Criminal and Unethical Conduct by the Thorpe Insulation Trustees,**

1 | **Trust Advisory Committee Members, Futures Representative and their Attorneys and**

2 | **Professionals.**

| Individual Committing Criminal Bankruptcy Fraud and/or Unethical Conduct | Criminal and Ethical Conduct |
|---|---|
| Stephen Snyder, Managing Trustee | Bankruptcy Fraud 18 U.S.C. § 152-157; 11 U.S.C. § 104. 11 U.S.C. 326(d), 328. California Rule of Professional Conduct 3-310 Perjury |
| Alan Brayton, Chairman of the Trust Advisory Committee | Bankruptcy Fraud 18 U.S.C. § 152-157 California Rule of Professional Conduct 3-310 Perjury; Many others |
| Gary Fergus, Attorney for the Futures Representative | Bankruptcy Fraud 18 U.S.C. § 152-157; 11 U.S.C. § 328 California Rule of Professional Conduct 3-310 Perjury |
| David McClain, Trust Advisory Committee Member | Bankruptcy Fraud 18 U.S.C. § 152-157 California Rule of Professional Conduct 3-310 |
| Sara Beth Brown, Executive Trustee | Bankruptcy Fraud 18 U.S.C. § 152-157 California Rule of Professional Conduct 3-310 Extensive Perjury |
| Laura Paul, Head of Claims Processing | Bankruptcy Fraud 18 U.S.C. § 152-157 Extensive Perjury |
| Benjamin Smith (Morgan Lewis and Bockius) | Bankruptcy Fraud 18 U.S.C. § 152-157; 11 U.S.C. 328 California Rule of Professional Conduct 3-310 Perjury |
| Steven Sacks (Shephard Mullin) | Bankruptcy Fraud 18 U.S.C. § 152-157 California Rule of Professional Conduct 3-310 Perjury |

\*\*\*\*\*

The Beneficiaries and Mandelbrot submit this Objection to the Annual Report and attached exhibits in order to demonstrate that the Trust, Trustees, Trust Advisory Committee Members and their respective Agents/Attorneys acted in bad faith, misappropriated millions of dollars, committed criminal bankruptcy fraud and their removal is necessary and a referral to the U.S. Attorney is appropriate. The Trust, by and through Managing Trustee Stephen Snyder, has engaged in a pattern and practice of criminal fraud through conflicts of interest and bad faith. In addition, the Trust (from at least 2007 through 2013) has criminally concealed the extensive fraud committed by Trust Advisory Committee

member Alan Brayton, including fraudulent defaults, misappropriations of funds and special bonuses and awards. In addition, this Court is urged to vacate any Judgments and Orders regarding Mandelbrot due to fraud, corruption and bad faith. This Court is urged to take appropriate action.

Dated: June 1, 2014

/s/ _MICHAEL J. MANDELBROT_
MICHAEL J. MANDELBROT
Attorney for Beneficiaries